# CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement ("Agreement") is made and entered into between (1) Doris Thrush, individually, as Administrator of the Estate of Charlie Thrush, deceased, and as next friend and mother of minors ▇▇▇▇ and ▇▇▇▇ (each individually a "Plaintiff" and collectively the "Plaintiffs"), and (2) CNH Industrial America LLC ("CNH" or "Defendant") (Plaintiffs and Defendant are each individually a "Party" and collectively the "Parties").

WHEREAS, in the late evening of October 4, 2020 or in the early morning of October 5, 2020, Charlie Thrush ("Mr. Thrush") was operating a CASE Model 1840 Skid Steer Loader ("the SSL") on his in-laws' farm located in southern Lincoln County, Kansas when the SSL overturned and subsequently caught fire ("the Accident"). Mr. Thrush was found deceased in the overturned SSL on the morning of October 5, 2020;

WHEREAS, on August 31, 2022, Plaintiffs filed suit against CNH in District of Kansas Case No. 2:22-cv-02345-KHV-TJJ ("the Lawsuit"), asserting claims related to the Accident and Mr. Thrush's death including (i) a product liability claim sounding in strict products liability pursuant to the Kansas Product Liability Act at K.S.A. § 60-3301, *et seq.*, (ii) a product liability claim sounding in negligence pursuant to the Kansas Product Liability Act at K.S.A. § 60-3301, *et seq.*, and (iii) a breach of warranty claim pursuant to the Kansas Consumer Protection Act at K.S.A. § 50-623, *et seq.*;

WHEREAS, in the Lawsuit, Plaintiffs sought damages including (a) the reasonable value of medical services Plaintiff's incurred as a result of Mr. Thrush's death, (b) the reasonable value of medical services Plaintiffs will incur in the future as a result of Mr. Thrush's death, (c) economic losses for Doris, ▇▇▇, and ▇▇ Thrush that Plaintiffs' damages expect witness calculated at $2,190,100.00, (d) non-economic damages of Mr. Thrush and his estate for pain, suffering, disfigurement, and any accompanying mental anguish in excess of $4,000,000.00, (e) non-economic damages for heirs-at-law Doris, ▇▇▇, and ▇▇ Thrush in an unstated amount but totaling "millions of dollars", (f) punitive damages in an unstated amount, (g) costs and interest on judgment, and (h) a civil penalty and attorney's fees;

WHEREAS, a Settlement Approval Hearing ("the Hearing") took place in the Lawsuit on October 10, 2023 and Plaintiffs' counsel provided notice of the Hearing to all of Mr. Thrush's heirs pursuant to K.S.A. § 60-1905;

WHEREAS, Tesia Odell and Christopher Thrush appeared for and participated in the Hearing, and also attempted to appear and participate on behalf of Joshua Thrush who was not present (Tesia Odell, Christopher Thrush, and Joshua Thrush are collectively the "Adult Heirs"), during which time the Adult Heirs did not object to the settlement of the Lawsuit or the Settlement Payment set out in Paragraph 2 below, but objected to them not receiving any funds from the apportionment of the Settlement Payment;

WHEREAS, following the conclusion of the Hearing, the Adult Heirs reached an agreement with Plaintiffs on the apportionment of the Settlement Payment, which is set out in

Exhibit A to this Agreement, thereby resolving any and all objections of the Adult Heirs' raised at the Hearing;

WHEREAS, K.S.A. § 60-1905 provides that "... The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto."

WHEREAS, Defendant expressly denies Plaintiffs' allegations, claims, and requested damages in the Lawsuit and further expressly denies any wrongdoing or liability related to the Accident;

WHEREAS, through this Agreement, the Parties desire to resolve any and all disputes between them in any way related to the SSL, the Accident, and the Lawsuit;

NOW THEREFORE, in consideration of the mutual obligations of this Agreement, the Parties agree as follows:

**1.     Court Approval of Settlement.** The Parties agree to cooperate in drafting and filing a Joint Application for Court Approval of Settlement and in participating in any hearings required by the Court for approval of the settlement in the Lawsuit, including any such hearings required by the Kansas Wrongful Death Act or for approval of the settlement on behalf of a minor.

Counsel for Plaintiffs will provide notice to all known heirs of Mr. Thrush in compliance with Kansas law, including but not limited to K.S.A. § 60-1905, of any hearing before the Court required to approve the settlement in this case. Plaintiffs agree to indemnify, defend, and hold harmless CNH and its past, present, and future members, parents, subsidiaries, affiliates, divisions, insurers, officers, directors, employees, attorneys, agents, representatives, predecessors, related entities, heirs, successors, and assigns, from any and all claims, liabilities, demands, causes of action (whether known or unknown, fixed or contingent), defenses (affirmative or otherwise, including any alleged credits or offsets), damages (whether or not liquidated), attorney's fees, costs, and/or expenses arising out of or related to the subject matter of the SSL, the Accident, and/or the Lawsuit which are asserted by any alleged heir(s) purporting to have an interest in the Settlement Payment or Mr. Thrush's estate.

**2.     Settlement Payment.** After Court approval and receipt of the executed Agreement, CNH agrees to make payments totaling ▮▮▮▮▮▮ as further described on Exhibit A (the "Settlement Payment"). Successful payment of the Settlement Payment resolves any and all claims Plaintiffs and/or the Adult Heirs may have against CNH related to the SSL, the Accident, and the Lawsuit. It is acknowledged Plaintiffs and the Adult Heirs are not asserting a claim for punitive damages or conscious pain and suffering, and based on evidence discovered, those potential claims are waived and as such, are resolved. The Parties intend that the Settlement Payment be allocated as set forth on Exhibit A, which is subject to Court approval. However, the Agreement and resolution of the Lawsuit are not contingent on any specific apportionment of the Settlement Payment, and this Agreement remains valid and enforceable even if the Court orders

an apportionment of the Settlement Payment that is different than the apportionment specified on Exhibit A.

3. **Dismissal of Lawsuit.** Within ten (10) business days of delivery of the Settlement Payment referenced in Paragraph 1 above, Plaintiffs agree to file a Notice of Voluntary Dismissal with Prejudice in the Lawsuit, which dismisses the Lawsuit with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) with each party to bear her or its own costs, expenses, and attorney's fees.

4. **Release.** In exchange for the successful payment of the Settlement Payment referenced in Paragraph 1 above, each Plaintiff, for itself or herself, and for its or her heirs, successors, and assigns (collectively the "Releasing Parties"), forever releases, settles, compromises, waives, discharges, and acquits CNH and its past, present, and future members, parents, subsidiaries, affiliates, divisions, insurers, officers, directors, employees, attorneys, agents, representatives, predecessors, related entities, heirs, successors, and assigns, from any and all claims, liabilities, demands, causes of action (whether known or unknown, fixed or contingent), defenses (affirmative or otherwise, including any alleged credits or offsets), damages (whether or not liquidated), attorney's fees, costs, and/or expenses, which each Releasing Party now has, or which have been, could have been, or could be asserted by each Releasing Party or on each Releasing Party's behalf, arising out of or related to the subject matter of the SSL, the Accident, and/or the Lawsuit. This release includes, but is not limited to, any and all claims arising under (i) any purported contract, written or oral, express or implied; (ii) any statutory or tort theory of recovery; (iii) any product liability, strict liability, or negligence theory of recovery; (iv) any federal, state, and local laws, statutes, or regulations; and (v) any claims arising in any other way, directly or indirectly, and without regard to the legal theory or form of action underlying such claims.

5. **Liens and Third-Party Claims.** The Plaintiffs represent and warrant that they will satisfy out of the settlement funds any purported liens or third-party claims that are at any time alleged to be applicable to the proceeds of this settlement, including any claim or lien of Medicaid, Medicare, hospital lien, or ERISA claim. The Plaintiffs and their attorneys agree to indemnify CNH in the event that any purported liens or third-party claims are asserted against any of them arising out of any sum paid as a result of damages suffered as a result of the Accident and such indemnity include any costs or attorneys' fees incurred by any release.

6. **No Admission of Any Claim.** It is understood and agreed that this Agreement is in compromise of claims that are and will continue to be disputed. This Agreement shall not in any way be construed as an admission of wrongdoing or liability by CNH. The Parties understand and agree that neither this Agreement nor the negotiations in pursuance thereof shall be interpreted to render Plaintiffs and/or the Adult Heirs a prevailing party for any reason, including, but not limited to, an award of attorney's fees, expenses, or costs under any statute.

7. **Confidentiality.** Plaintiffs hereby acknowledge that this Agreement, all terms and conditions stated herein, and the Parties' negotiations are CONFIDENTIAL, and as an express condition of this settlement, the Parties and their representatives agree that the confidential nature of this Agreement will be maintained at all times. If asked about the Lawsuit, however, Plaintiffs can respond that "the matter has been settled and resolved" without violating this confidentiality provision.

The amount and terms of the settlement and the negotiations thereof may not be discussed by the Parties with any third persons, with the exception of retained counsel and their staff, the court or court personnel as necessary to obtain court approval of this settlement for probate purposes and as required by the Kansas Wrongful Death Act, or with retained tax or financial advisors as necessary. In the event such information is communicated to such third persons, Plaintiffs agree to inform any such persons of the confidential nature of this Agreement and obtain the agreement of such persons that they and their staff will maintain the confidentiality of this settlement and the amount thereof. To the extent this Agreement and the amount of this settlement is necessary to be identified for purposes of probate or related Estate proceedings or for approval under the Kansas Wrongful Death Act, Plaintiffs and their counsel or advisors shall present or file this Agreement under seal, to be viewed by the presiding judge or probate referee only, and there maintained under seal. The Parties understand and acknowledge that the Court specifically ordered that the Adult Heirs be bound by this Confidentiality provision at the Settlement Approval Hearing on October 10, 2023.

**8.    Non-Disparagement.** Plaintiffs agree not to directly or indirectly communicate, or cause anyone else to communicate, with or to any other person or entity in any way that disparages CNH or that could damage or impugn the reputation of CNH.

**9.    Warranty of Capacity to Execute Agreement.** Plaintiffs represent and warrant that:

   a. They have the right, authority, and capacity to execute this Agreement and to receive the consideration specified by it;

   b. No other person or entity has any interest in the claims, demands, obligations and causes of action referred to in this Agreement, except to the extent a lienholder may claim an interest related to the payment of reimbursement for medical expenses paid on behalf of Plaintiffs or to the extent of attorneys' fees incurred in connection with the prosecution of this Lawsuit;

   c. Plaintiffs have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations and causes of action referred to in this Agreement or the Lawsuit; and

   d. There are no other persons or entities who now have or may hereafter acquire the rights of Plaintiffs to proceed against CNH on any action, claim, demand, obligation, cause of action, or controversy arising out of or relating in any manner whatsoever to their injuries or losses, and any of the claims, demands, obligations and causes of action referred to in this Agreement.

**10.    Advice of Counsel.** By entering into this Agreement, the Plaintiffs represent that they have relied upon the advice of their respective attorneys, who are the attorneys of their own choice, concerning the legal and tax consequences of this Agreement, that the terms of this Agreement have been explained to them by their respective attorneys, and that the terms of this Agreement are fully understood and voluntarily accepted by them.

11. **Entire Agreement.** In signing this Agreement, the Parties understand that the terms hereof are contractual and not merely a recital, and that they are not relying upon any statement or representation made by the other party (other than those reflected in this Agreement), but, instead, they are relying solely upon their own judgment and/or the advice of their attorney. The Parties acknowledge that this Agreement is the entire agreement of the Parties regarding this matter and that this Agreement supersedes any prior agreements regarding this matter. This Agreement may not be modified, altered, or changed except in a writing signed by all of the Parties.

12. **Severability.** Should any provision of this Agreement be declared or determined by any court to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal, invalid, or unenforceable part, term or provision be deemed not to be part of this Agreement.

13. **Choice of Law, Forum Selection, and Prevailing Party Attorney's Fees.** The Parties agree that Kansas law governs the interpretation and enforcement of this Agreement. Moreover, the Parties further agree that any claims relating to the interpretation and/or enforcement of this Agreement must be brought and litigated exclusively and only in the United States District Court for the District of Kansas. The Parties further agree that the prevailing party in any such action is entitled to the recovery of its reasonable attorney's fees and costs, as well as interest accruing on any outstanding amounts owed at the highest amount allowed under Kansas law.

14. **Medicare Section 111 Reporting.** Plaintiffs and their counsel specifically represent and warrant that Charlie Thrush was a Medicare Beneficiaries as of October 4, 2020, and Doris Thrush is currently not a Medicare Beneficiary. Plaintiffs and their counsel represent and warrant that there is no Medicare lien or claim applicable to Plaintiffs' claims in this litigation, and that no conditional payments have been made to Plaintiffs by Medicare for any injury or medical condition related in any way to this litigation. Plaintiffs' counsel are aware of Medicare's potential interest in this settlement to the extent Medicare may have made conditional payments for medical services or items received by Claimant (pursuant to 42 U.S.C. § 1395y(b) and the corresponding regulations) and related to the accident, injury, or illness giving rise to this settlement, and/or arising from or related to the matters forming the basis of Plaintiffs' claims. If they have not done so already, Plaintiffs will provide Doris Thrush's date of birth and Social Security Numbers or Health Insurance Claim Numbers ("HICN") so that CNH may run a query to confirm that Doris Thrush was not and is not a Medicare Beneficiaries. Plaintiffs agree to defend CNH against any suit, regulatory, or administrative proceeding and/or to indemnify CNH for any fines or penalties which may result from the failure to provide or the false or incorrect reporting to CNH by Plaintiffs of Charlie and Doris Thrush's date of birth, social security number, or HICNs.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ AND FULLY UNDERSTAND THE FOREGOING AGREEMENT, THAT THEY ARE HEREBY ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTING THIS AGREEMENT, THAT THEY ARE SIGNING KNOWINGLY AND VOLUNTARILY, AND THAT THEY ARE UNDER NO DURESS OR PRESSURE TO DO SO.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.**

_Doris Thrush_     Date: 10-31-23

Doris Thrush, Individually,
as Administrator of the Estate of Charlie Thrush, Deceased,
and as Next Friend and Mother of Minors ▇▇▇▇▇ and ▇▇▇▇▇

Date: _____

CNH Industrial America LLC
By Richard P. Konrath
Vice President, North America Legal, Compliance, and Secretary

0137131.0778308   4876-2044-3016v1

_____    Date: _____
Doris Thrush, Individually,
as Administrator of the Estate of Charlie Thrush, Deceased,
and as Next Friend and Mother of Minors ▌▌▌▌▌▌ and ▌▌▌▌

*[signature]*

_____    Date: \_\_11/1/23_____
CNH Industrial America LLC
By Richard P. Konrath
Vice President, North America Legal, Compliance, and Secretary

0137131.0778308  4876-2044-3016v1

**Exhibit A to the Confidential Settlement and Release Agreement
between (1) Doris Thrush, individually, as Administrator of the Estate of Charlie Thrush, deceased, and as next friend and mother of minors ▮▮▮▮ and ▮▮▮▮ (each individually a "Plaintiff" and collectively the "Plaintiffs"), and (2) CNH Industrial America LLC ("CNH" or "Defendant") (Plaintiffs and Defendant are each individually a "Party" and collectively the "Parties")**

**Payments**

In consideration of the release set forth in Paragraph 4 of the Confidential Settlement and Release Agreement and subject to approval by the Court of the settlement between the Parties and the apportionment of settlement payments identified below, Defendant agrees to pay the sums outlined below (collectively the "Settlement Payment") within thirty (30) days of Court approval:

1. ▮▮▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) payable to Neustrom and Associates, PA Trust Account (the "Lump Sum Payment") to be apportioned and distributed according to (i) the Distribution Worksheet – Charlie Thrush that was signed by Doris Thrush on behalf of Plaintiffs on October 17, 2023 and (ii) the one-paragraph settlement agreement that was signed by Tesia O'Dell, Joshua Thrush, and Christopher Thrush (collectively, the "Adult Heirs") on October 11, 2023 and October 13, 2023.

2. ▮▮▮▮ (▮▮▮▮▮▮▮▮▮▮▮▮▮▮) made payable to Pacific Life & Annuity Services, Inc., to fund the future periodic payments made according to the following schedule (the "Periodic Payments"):



**Payable to** ▮▮▮▮ ("Payee")

▮▮▮▮ annually for 4 years guaranteed, beginning on May 18, 2028. The last payment will be made on May 18, 2031.

▮▮▮▮ guaranteed lump sum payable on May 18, 2035

**Payable to** ▮▮▮▮ ("Payee")

▮▮▮▮ annually for 4 years guaranteed, beginning on August 21, 2030. The last payment will be made on August 21, 2033.

▮▮▮▮ guaranteed lump sum payable on August 21, 2037

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

1

**Allocation of Settlement Payment**

From the Settlement Payment, the Parties intend that payment of Plaintiffs' attorneys' fees and costs, per their fee contract, and payment of any liens will be deducted from the Lump Sum Payment and any net proceeds from the Lump Sum will be distributed to Doris Thrush and the Adult Heirs as indicated in Paragraph 1 above. The Periodic Payments will not be affected by any attorneys' fees or liens.

**Payees' Rights to Payments**

Plaintiffs acknowledge that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any payee; nor shall the Plaintiffs or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

**Consent to Qualified Assignment**

Plaintiffs acknowledge and agree that, subject to Court approval of the settlement between the Parties and the apportionment of settlement payments, the Defendant shall make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's liability to make the Periodic Payments set forth in Payments section 2, above, to Pacific Life & Annuity Services, Inc. ("the Assignee") using the form Qualified Assignment and Release Agreement provided by the Assignee. The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Defendant (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Any such assignment, if made, shall be accepted by the Plaintiffs without right of rejection and shall completely release and discharge the Defendant from the Periodic Payments obligation assigned to the Assignee. The Plaintiffs recognize that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and Plaintiffs agree that such assignment shall constitute a full release and discharge of all of Defendant's obligations relative to the Periodic Payments set forth above.

**Right to Purchase an Annuity**

Once assigned, the Assignee reserves the right to fund the liability to make the Periodic Payments in Payments section 2, above, through the purchase of annuity policies from Pacific Life Insurance Company. The Assignee shall be the sole owner of the annuity policies and shall have all rights of ownership. The Assignee may have Pacific Life Insurance Company mail payments directly to the Payees. The Plaintiffs shall be responsible for maintaining a current mailing address for the Payees with Pacific Life Insurance Company.

2

**Discharge of Obligation**

THE PARTIES EXPRESSLY UNDERSTAND AND AGREE THAT, WITH THE DEFENDANT'S ASSIGNMENT OF THE DUTIES AND OBLIGATIONS TO MAKE SUCH PERIOD PAYMENTS TO PACIFIC LIFE & ANNUITY SERVICES, INC., ALL OF THE DUTIES AND RESPONSIBILITIES OTHERWISE IMPOSED UPON THE DEFENDANT BY THE CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT WITH RESPECT TO SUCH PERIODIC PAYMENTS SHALL CEASE, AND INSTEAD SUCH OBLIGATION SHALL BE BINDING SOLELY UPON PACIFIC LIFE & ANNUITY SERVICES, INC. THE PARTIES FURTHER UNDERSTAND AND AGREE THAT WHEN THE ASSIGNMENT IS MADE, THE DEFENDANT SHALL BE RELEASED FROM ALL OBLIGATIONS TO MAKE SUCH PERIODIC PAYMENTS AND PACIFIC LIFE & ANNUITY SERVICES, INC. SHALL AT ALL TIMES BE DIRECTLY AND SOLELY RESPONSIBLE FOR, AND SHALL RECEIVE CREDIT FOR, THE PERIODIC PAYMENTS, AND THAT WHEN THE ASSIGNMENT IS MADE, PACIFIC LIFE & ANNUITY SERVICES, INC. ASSUMES THE DUTIES AND RESPONSIBILITIES OF THE INSURER WITH RESPECT TO SUCH PERIODIC PAYMENTS.

Once assigned, the obligation of the Assignee to make each Periodic Payment shall be determined by the payment mode in which payment is made. If payment mode is by check sent by the United States mail, discharge occurs upon the mailing of a valid check in the amount of such payment to the designated address of the Payees listed in Payments section of this Agreement. If a Payee reports a lost check, a replacement check will be issued. If the payment mode is by electronic funds transfer, discharge occurs upon the electronic transferring of funds, in the amount of such payment, into the Payee's bank account.

**Payee's Beneficiary**

Any payments to be made after the death of a Payee pursuant to the terms of the Confidential Settlement Agreement and Release shall be made to the Estate of the Payee. After the age of majority, a Payee may submit a change of beneficiary in writing to the Assignee. The designation must be in a form acceptable to the Assignee.

LR06631.0768655   4868-9332-6722v1

DISTRIBUTION WORKSHEET
CHARLIE THRUSH
September 15, 2023

**Received from CNH** ▮

**Less Costs and Expenses (See Attached – Fields** ▮ ;
N&A ▮ ) (▮)

▮

**Less Attorney Fees – 40%\* (½ Fields =** ▮
½ N&A = ▮ ) (▮)

**TOTAL RECOVERY FOR CLIENT** ▮

Amount Distributed to DORIS THRUSH $ ▮

Amount Distributed to _____ fbo ▮ $ ▮

Amount Distributed to _____ fbo ▮ $ ▮

**Amount to Pacific Life & Annuity Services, Inc.**
fbo ▮
Fbo ▮ ▮

\*I understand the decision to settle is my sole decision. I have had extensive discussions with my attorney about my lawsuit, and I have made the decision to settle. I have instructed my attorney to settle this matter as reflected herein.

Kansas Supreme Court Rules provide the right for all clients to request the court having appropriate jurisdiction to review the reasonableness of any attorney fee charged. I have reviewed the above settlement distributions and approve distributions to me and my attorney pursuant to the terms stated herein.

I also understand that Neustrom & Associates, P.A., will retain their files and records regarding this claim for two (2) years. After that date, the files may be destroyed at any time. Client has a right to take possession of the files at any time in order to prevent their destruction.

I also understand Neustrom & Associates, P.A. are not tax attorneys, and any tax consequences of any settlement proceeds should be discussed with a CPA or consultant or other tax professional

X _10-17-23_
Date

X _Doris Thrush_
Doris Thrush

Approved
P.1

In order to satisfy and claims or objections filed by family members who make claim as heirs, the parties and attorneys agree to reduce their share so ▓▓▓▓ can be distributed equally to the undersigned who agree to release any claim they have as heirs against any of the parties to this case, Plaintiff and Defendant, the estate, Doris or her attorneys. We acknowledge we have been advised we have the right to an attorney and can present evidence in court and waive that right, in return for ▓▓▓▓ each. We agree to sign any documents necessary to carry out the terms of this agreement.

_Tesia Odell_    10-11-23
Tesia Odell

_[signature]_    10-13-23
Joshua Thrush

_[signature]_    10-11-23
Christopher Thrush

This Agreement and Distribution is CONFIDENTIAL